933 So.2d 1180 (2006)
Danny Earl JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-4711.
District Court of Appeal of Florida, Fourth District.
May 17, 2006.
Opinion on Clarification August 9, 2006.
Carey Haughwout, Public Defender, and Jeffrey N. Golant, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Danny Earl Jackson was found guilty of possession of cocaine and violation of probation as a result of this drug offense. He appeals his conviction and sentence. Of the five issues he raises on appeal, only one constitutes reversible error. Reversible error occurred when the prosecutor was permitted to shift the burden of proof to the defendant at trial.
At trial, two witnesses testified for the state: the arresting officer and the forensic chemist. Deputy Matthew Woods of the St. Lucie Sheriff's Office testified that he encountered the defendant while patrolling in the 800 block of Avenue G in Ft. Pierce. He described this area as a little dirt road running east between North 9th Street and North 8th Street. There are four duplexes on the block, two of which are vacant. Deputy Woods testified that *1181 this location is a known drug area and that it is uncommon to see white people in the area unless they are there to buy narcotics.
During mid-afternoon on May 14, 2004, Deputy Woods observed the defendant, a middle-aged white man, drive into the area and engage in a hand-to-hand transaction with a black man sitting behind the duplexes. Seconds later, the defendant returned to his car and backed out onto the paved road of North 9th Street. When he backed out, he caused another vehicle traveling on North 9th Street to come to a complete stop.
Deputy Woods pulled the defendant over for obstructing traffic and engaging in what he believed was a narcotics transaction. He asked the defendant to step out of his vehicle and told him what he had observed. According to Woods, the defendant admitted that he had purchased two crack cocaine rocks, but said that he had thrown them out the window before he was stopped.
Officer Woods asked the defendant if could pat him down for his own safety. The defendant consented. The deputy found an eyeglasses case in the defendant's breast pocket. He removed the case from the defendant's pocket, then pulled it open and slid the glasses out of the case "a little bit" to confirm what they were. When he opened the case and pulled the glasses partially out, he could see six crack rocks at the bottom of the case. He arrested the defendant for possession of cocaine.
The defendant took the stand and denied that the eyeglasses case in evidence was his. He testified that it was not the same eyeglasses case he had in his pocket when he was arrested. He denied that the crack was his and, further, denied seeing any cocaine. He also denied telling the deputy at the scene that he had purchased cocaine and thrown it out the window.
The prosecutor cross-examined the defendant:
MR. WELLS: You were arrested May fourteenth, two thousand four, weren't you?
DANNY JACKSON: Yes, sir.
MR. WELLS: This is the first time you're claiming that, uh, the glass case that was, uh, seized, uh, is not your case. Isn't that true?
DANNY JACKSON: I never claimed the glass case 
MR. WELLS: You're saying you never saw that glass case before, it's not yours.
DANNY JACKSON: That one is not mine.
MR. WELLS: Are you saying there's a, a different case that you had?
DANNY JACKSON: The, the case that was in my pocket was a maroon 
MR. WELLS: Is it 
DANNY JACKSON:  case, it was almost brand new.
MR. WELLS: Alright, so you're talking about this brand new maroon case, uh, and this is the first time you, you're claiming that that case that was seized is not yours. Isn't that true?
DANNY JACKSON: The, the question was never brought to my attention before.
MR. WELLS: Well, this case has been pending since May fourteenth, two thousand four.
DANNY JACKSON: Yes, sir.
MR. WELLS: Okay. You've had an attorney, uh, representing you that, uh, close to that time through today, haven't you?
DANNY JACKSON: I've had two.
MR. WELLS: Okay, you've had two attorneys and this is the first time on the eve of trial that you're now raising this issue about your glass case.

*1182 MR. HURST: Objection, Your Honor. May we approach?
At this point, defense counsel objected, arguing that the defendant had no obligation to confront the evidence prior to trial. The trial court overruled the objection.
During closing argument, the prosecutor argued:
This isn't a case about reasonable doubt. It's a case about he's being framed. The defense opened up in this case with this is a classic case about reasonable doubt, yet when the defendant testified, he testified effectively that Deputy Matt Woods was lying, Deputy Matt Woods planted the cocaine on him, Deputy Matt Woods used a different, uh, glasses case and he doesn't know how this cocaine got in there, it wasn't in his glasses case, this is the first time he didn't see this glasses case and that's what this case is about. Is that how this case opened up when we talked about our opening. I submit to you that this is information that the defendant manufactured at the last minute to save his skin because he knows he's guilty based on the evidence that was brought in today.
. . .
You can also take into consideration the timing of his statement, uh, you heard that he, the arrest occurred back in May fourteenth, two thousand four. I submit to you that the first time this issue about the, the glasses case and the cocaine not being his was raised when he testified. Was the information and the, the characterization of the case when it's presented to you by both sides one that there's going to be evidence of framing. You think that would be something important when you're evaluating the case. You think that the defense attorney would, would like to cross examine the witness about, uh, where the evidence was, how he came about to have the glasses case. I submit to you that that defendant just made it up right before he decided to testify because if it happ  it was an issue before he came into court today, it would have been raised, it would have been raised by one of his two prior attorneys and it would have been raised at some point prior to this, but no. It was raised at the eleventh hour right before he realized he's getting ready to go in flames, uh, he changed his test  well, he decided to testify to a set of facts, uh, and, and put the officer's credibility at issue.
. . .
And you would think that is this whole case was about the, a glasses case that was not his, about cocaine found in glasses cases (sic) that weren't his, that he's on trial for, you would think that some issue would be raised to his testimony and prior to court here today, especially with having two lawyers on the case. I submit that that (sic) it was impossible for, the two lawyers to find anything out because it was not raised prior to him testifying. It was his attempt to ambush the, uh, uh, the, the view in terms of the case.
The jury found the defendant guilty of cocaine possession and the trial court revoked his probation. The defendant was sentenced to concurrent prison terms of thirty years for the probation violation and five years for the cocaine possession charge.
On appeal, the defendant argues that he was denied due process when the prosecutor was permitted to shift the burden of proof to the defense. He contends that the prosecutor improperly cross-examined him about his failure to dispute that the eyeglasses case was his at any time before trial. He further argues that *1183 the prosecutor compounded this error by making frequent references to it during closing argument. According to the defendant, the prosecutor's cross-examination and argument combined to lead the jury to believe that the defendant had an affirmative obligation to raise this matter regarding the eyeglasses case before trial and, essentially, mount a defense.
Defendant correctly argues that he was under no obligation to disclose the substance of his testimony to the state prior to trial.
It is well settled that due process requires the state to prove every element of the crime beyond a reasonable doubt, and that a defendant has no obligation to present witnesses. Accordingly, the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe the defendant carried the burden of introducing evidence.
Hayes v. State, 660 So.2d 257, 265 (Fla. 1995) (quoting Jackson v. State, 575 So.2d 181, 188 (Fla.1991)).
"[T]he State may not comment on a defendant's failure to mount a defense because doing so could lead the jury to erroneously conclude that the defendant has the burden of doing so."[1]Rodriguez v. State, 753 So.2d 29, 38 (Fla.2000). Though this issue usually arises when the prosecutor comments on the defendant's failure to mount a defense at trial, leading a jury to believe that a defendant must meet this burden before trial is perhaps even more egregious.
As the supreme court noted in Rodriguez, 753 So.2d at 39, remarks that impermissibly suggest a burden on the defendant to prove his innocence are subject to a harmless error analysis. Here, where the case boiled down to a credibility contest between the defendant and the arresting officer, we cannot conclude that this error was harmless beyond a reasonable doubt. See Goodwin v. State, 751 So.2d 537 (Fla.2000).
Accordingly, we reverse and remand this cause for a new trial.
STEVENSON, C.J. and GUNTHER, JJ., concur.

ON MOTION FOR CLARIFICATION
TAYLOR, J.
The state has moved for clarification as to the effect of our reversal of appellant's conviction for possession of cocaine upon the order finding a violation of probation. Appellant's probation was revoked upon the trial court's finding that appellant violated Condition 5 of his probation: to remain at liberty without violating the law. Pursuant to stipulation, the trial court used the evidence presented during the jury trial as the basis for the violation of probation.
In reversing appellant's conviction for possession of cocaine, we concluded that the trial court erred in permitting the prosecutor to shift the burden of proof to the defense during cross-examination of appellant and during closing argument. Because the record does not indicate whether the trial court was influenced by these trial tactics in finding that appellant violated his probation, we clarify that our reversal for a new trial on the possession of cocaine charge includes directions to the trial court, on remand, to reconsider appellant's probation revocation consistent with our opinion. In determining whether appellant violated his probation, the trial court may reconsider the same testimony *1184 and argument presented at trial, excluding those portions we found improper. Alternatively, the court may, in its discretion, defer consideration of the probation violation charge until after re-trial of the substantive charge of possession of cocaine.
STEVENSON, C.J. and GUNTHER, JJ., concur.
NOTES
[1] There is a "narrow exception" to this rule where the defendant has asserted the defense of alibi, self-defense or defense of others, but that exception does not apply here. See id.